**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRAZOS VALLEY PHYSICIAN'S ORGANIZATION-MSO, LLC
3131 University Drive East
Bryan, TX 77802

COVENANT MEDICAL CENTER
3615 19th Street
Lubbock, TX 79410

DOCTORS HOSPITAL AT RENAISSANCE, LTD.
d/b/a DHR Health
5501 South McColl Road
Edinburg, TX 78539

HERITAGE PARK SURGICAL HOSPITAL LLC
3601 North Calais Drive
Sherman, TX 75090

Case No. 1:26-cv-3043

KNAPP MEDICAL CENTER
1401 East Eighth Street
Weslaco, TX 78596

LUBBOCK HEART HOSPITAL, LLC
4810 North Loop 289
Lubbock, TX 79416

LUBBOCK HERITAGE HOSPITAL, LLC
d/b/a Grace Medical Center
7509 Marsha Sharp Fwy
Lubbock, TX 79407

MIDLAND MEMORIAL HOSPITAL
400 Rosalind Redfern Grover Parkway
Midland, TX 79701

ORTHOPEDIC & SPINE SURGICAL HOSPITAL OF SOUTH TEXAS, L.P.
18600 North Hardy Oak Boulevard
San Antonio, TX 78258

PALESTINE REGIONAL MEDICAL CENTER
2900 South Loop 256
Palestine, TX 75801

SCOTT & WHITE HOSPITAL - MARBLE FALLS )
d/b/a Baylor Scott & White Medical Center - Marble Falls )
301 North Washington Avenue )
Dallas, TX 75246 )
)
TEXAS SPINE AND JOINT HOSPITAL LTD )
1814 Roseland Boulevard )
Tyler, TX 75701 )
)
*Plaintiffs*, )
)
v. )
)
ROBERT F. KENNEDY, JR., in his official capacity as )
Secretary of Health and Human Services, )
200 Independence Avenue, S.W. )
Washington, DC 20201, )
*Defendant*. )
)

**COMPLAINT**

## I. INTRODUCTION AND NATURE OF SUIT

1. The Medicare program reimburses hospitals for inpatient services through the inpatient prospective payment system ("IPPS"). Payment is calculated for each inpatient encounter by multiplying a base payment known as the "standardized amount," which reflects the national average cost of a typical inpatient encounter, by a prospectively determined rate (diagnosis-related group, or "DRG") that best describes the treatment administered to the patient. *See* 42 U.S.C. § 1395ww(d).

2. The Medicare statute requires the Secretary of Health and Human Services (the "Secretary") to identify the labor-related share of the standardized amount and to adjust it for each hospital to account for differences in wages and wage-related costs between geographic areas. This adjustment is known as the wage index. The Secretary calculates the wage index annually based on a national survey of the wages and wage-related costs of hospitals. 42 U.S.C. § 1395ww(d)(3)(E).

3. The Medicare program reimburses hospitals for outpatient services through the outpatient prospective payment system ("OPPS"). OPPS payments are also adjusted by the wage index to account for geographic differences in wage costs. Under the Secretary's regulations, OPPS payments must be adjusted by the wage index that he annually calculates for IPPS. 42 C.F.R. § 419.43(c)(1).

4. In section 4410(a) of the Balanced Budget Act of 1997 ("BBA"), Congress directed the Secretary to ensure that, regardless of the outcome of his annual survey, the wage index adjustment that is assigned to urban hospitals will not be less than the wage index adjustment that is assigned to rural hospitals within the same state. This is known as the rural floor. Pub. L. No. 105-33, § 4410(a), 111 Stat. 251, 402 (1997).

5. And in section 401 of the Consolidated Appropriations Act of 2000 ("CAA"), Congress created a mechanism for hospitals located in urban areas to apply to be reclassified as rural for purposes of IPPS. Pub. L. No. 106-113, § 401, 113 Stat. 1501, 1501A-321 (codified at 42 U.S.C. § 1395ww(d)(8)(E)). The statute provides that if a hospital is approved for rural reclassification, the Secretary "*shall* treat the hospital as being located in the rural area . . . of the State in which the hospital is located." *Id*. (emphasis added).

6. In the IPPS final rule for federal fiscal year ("FY") 2020, the Secretary ignored Congress's unambiguous directives in section 4410(a) of the BBA and section 401 of the CAA. That year, the Secretary adopted a policy whereby the rural floor for urban hospitals would not be equal to the wage index that is assigned to rural hospitals within the same state. 84 Fed. Reg. 42044, 42332–36 (Aug. 16, 2019), in direct contravention of section 4410(a) of the BBA. The Secretary implemented his unlawful divorce of the rural floor and the rural wage index by excluding the wage data of reclassified rural hospitals from the calculation of the rural floor, while including that same wage data in the calculation of the rural wage index, a practice that violated section 401 of the CAA because it failed to treat reclassified rural hospitals the same as geographically rural hospitals. The Secretary continued his unlawful policy in setting the rural floors for IPPS payments in FYs 2021 and 2022. 85 Fed. Reg. 58432, 58768 (Sep. 18, 2020) (FY 2021 IPPS Final Rule); 86 Fed. Reg. 44774, 45180 (Aug. 13, 2021) (FY 2022 IPPS Final Rule). And in accordance with his binding regulation at 42 C.F.R. § 419.43(c)(1), he also used his unlawful IPPS wage adjustment factors for FYs 2020, 2021 and 2022 to adjust OPPS payments for calendar years ("CYs") 2020 through 2022. 84 Fed. Reg. 61142, 61187–88 (Nov. 12, 2019) (FY 2020 OPPS Final Rule); 85 Fed. Reg. 84472, 85916–17 (Dec. 29, 2020) (2021 OPPS Rule); 86 Fed. Reg. 63458, 63511 (Nov. 16, 2021) (2022 OPPS Rule).

7. Affected hospitals filed appeals challenging the rural floor policy that the Secretary adopted in the FY 2020 IPPS rule. After exhausting their administrative remedies, those hospitals brought their appeals to the United States District Court for the District of Columbia. The Court ruled in favor of the hospitals, holding that the Secretary's practice of calculating the rural floor and rural wage index separately was unlawful. *See Citrus HMA, LLC v. Becerra*, 597 F.Supp.3d 450, 461 (D.D.C. 2022).

8. The Secretary did not appeal the *Citrus* decision. Rather, in the IPPS final rule for FY 2023, the Secretary discontinued his policy of separately calculating the rural floor and rural wage index. *See* 87 Fed. Reg. 48780, 49004 (Aug. 10, 2022). But this change was only effective for 2023 and onward. *Id.* The Secretary did not correct the rural floors he calculated for IPPS and OPPS in 2020 through 2022.

9. The Plaintiffs in this case challenge the Secretary's calculation of the rural floors in FY 2022, which was calculated under the same methodology that this Court declared unlawful in *Citrus*. With respect to these claims, the Plaintiffs seek to have (1) their IPPS payments adjusted based on lawfully calculated rural floors for FY 2022, and (2) their OPPS payments for CY 2022 adjusted by the same wage index that is applied to their IPPS payments for FY 2022, as required by 42 C.F.R. § 419.43(c)(1).

10. Plaintiffs also challenge the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873. Section 413.24(j) requires hospitals, at the time they file their annual Medicare cost reports, to identify and present to their Medicare Administrative Contractors ("MACs") unallowable claims for Medicare payment (i.e., claims for payment not permitted under the Secretary's rules) for which the hospitals ultimately intend to seek administrative and/or judicial review. And section 405.1873 provides that if a hospital seeks administrative and/or judicial

review for an unallowable claim that it did not report to the MAC at the time of filing its cost report, the Secretary will not be liable for the claim even if the hospital prevails on its claims and a federal court sets aside the Secretary's prior payment determination. These provisions are collectively known as the self-disallowance regulation.

11. The Provider Reimbursement Review Board ruled that some of the Plaintiffs did not self-disallow their claims for the additional reimbursement they are owed for the rural floors that the Secretary unlawfully calculated and applied in 2022. As a result, even if this Court holds that the Secretary miscalculated the IPPS and OPPS payments owed to those Plaintiffs, the Secretary's self-disallowance regulation shields him from liability by instructing his contractors to ignore the Court's judgment unless the court also invalidates 42 C.F.R. §§ 413.24(j) and 405.1873.

12. The self-disallowance regulation is unlawful because the Secretary lacks authority to promulgate it. Even if the Secretary does have authority to do so, the self-disallowance regulation is still unlawful because it violates the plain language of the Medicare statute governing the administrative review of provider reimbursement claims, and it is arbitrary and capricious. Requiring providers to notify their MACs of the obvious—that a Medicare regulation prohibits payment for a claim—serves no purpose other than to give the Secretary a technical reason to shield himself from liability once that regulation is invalidated. For years, the Secretary has struggled to justify, both legally and rationally, similar self-disallowance requirements. Indeed, this marks the Secretary's third attempt to impose a self-disallowance requirement as a condition for obtaining relief from administrative and/or judicial review. The first attempt was invalidated by the Supreme Court, and the Secretary acquiesced in a decision by the United States District Court for the District of Columbia which invalidated his second attempt. This third attempt should

fare no better than the prior two. Accordingly, Plaintiffs ask this Court to find the self-disallowance regulation contrary to the Medicare statute and the Administrative Procedure Act.

## II. PARTIES

13. The Plaintiffs in this action are twelve (12) hospitals located in the state of Texas that participate in the Medicare program, are reimbursed under IPPS and OPPS, and were assigned wage index adjustments in 2022 that were lower than the wage index adjustments assigned to rural hospitals in Texas. The Plaintiffs are listed in Exhibit 1 with their Medicare provider numbers.

14. The Defendant, Robert F. Kennedy, Jr., is the Secretary of the United States Department of Health and Human Services ("HHS"). He is sued in his official capacity. HHS is the Federal agency that administers the Centers for Medicare & Medicaid Services ("CMS"). CMS is the Federal agency to which the Secretary has delegated administrative authority over the Medicare program, which is established under title XVIII of the Social Security Act. *See* 42 U.S.C. § 301 *et seq.* References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## III. JURISDICTION AND VENUE

15. This action arises under the Medicare statute, title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 551-559 and 701-706.

16. Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii) and 1395oo(f)(1).

17. Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

## IV. BACKGROUND

### A. Medicare Payment for Inpatient and Outpatient Hospital Services

18. The Medicare program provides federally funded health insurance for certain elderly and disabled persons under title XVIII of the Social Security Act. 42 U.S.C. § 1395, *et seq*. This dispute implicates Medicare Part A, which covers inpatient hospital and certain other institutional services. 42 U.S.C. § 1395d(a)(1). This case also involves Medicare Part B, which covers, among other things, outpatient hospital services. 42 U.S.C. § 1395*l*(t).

19. Prior to October 1, 1983, Medicare paid hospitals for inpatient services on a retrospective "reasonable cost" basis. 42 U.S.C. § 1395f(b). The Social Security Amendments of 1983 instituted a new prospective payment system for inpatient hospital services known as the IPPS effective for cost reporting periods beginning on or after October 1, 1983. Social Security Amendments of 1983, Pub. L. No. 98-21, § 601, 97 Stat. 65, 149-172 (1983), codified at 42 U.S.C. § 1395ww(d).

20. Under IPPS, payment is calculated for each inpatient encounter by multiplying a base payment amount known as the standardized amount, which represents the national average cost of treating an inpatient, by an adjustment factor known as a DRG, which represents the relative amount of resources the hospital is projected to expend treating the patient. 42 U.S.C. § 1395ww(d).

21. In the BBA, Congress introduced a prospective payment system for outpatient hospital services effective for services furnished on or after August 1, 2000. Pub. L. No. 105–33, § 4523, 111 Stat. 251, 445 (1997). OPPS payments are calculated by multiplying a "conversion factor" by an adjustment factor known as an APC, which like the DRG for IPPS payments, represents the relative resource cost of treating the patient. 42 U.S.C. § 1395l(t)(3)(D).

**B. The Medicare Wage Index**

22. Congress recognized it was necessary to adjust IPPS and OPPS payments to account for the differences in labor costs between geographic areas to ensure that hospitals with higher-than-average wage costs would be adequately compensated. Accordingly, Congress instructed the Secretary to identify the portion of the standardized amount that represents wages and wage-related costs (i.e., the labor-related share) and to adjust that portion for each hospital by a factor reflecting the relative wages of the hospital to all hospitals nationally. 42 U.S.C. § 1395ww(d)(3)(E); 42 C.F.R. § 412.64(h). This is known as the wage index adjustment.

23. The Secretary assigns wage index adjustments to hospitals based on geographic location. 69 Fed. Reg. 48915, 49026 (Aug. 11, 2004). For wage index purposes, there are two types of geographic areas: urban areas and rural areas. The Medicare statute and the Secretary define an urban area as a Metropolitan Statistical Area ("MSA") (or a Metropolitan division where applicable) as defined by the Office of Management and Budget. 42 U.S.C. § 1395ww(d)(2)(D); 42 C.F.R. § 412.64(b)(ii)(A). A rural area is any area outside an urban area. 42 U.S.C. § 1395ww(d)(2)(D); 42 C.F.R. § 412.64(b)(ii)(C).

24. The Secretary calculates one wage index adjustment for each urban area (i.e., MSA). *See* 69 Fed. Reg. 48916, 49026–34 (Aug. 11, 2004). For rural areas, the Secretary calculates one wage index adjustment for each state. *See id*. That is, each state has a wage index adjustment that is applied to all rural areas within the state.

25. The Medicare statute requires the Secretary to update the wage index annually by conducting a survey of the wages and wage-related costs of all hospitals nationally. 42 U.S.C. § 1395ww(d)(3)(E). To accomplish this, the Secretary collects wage and hour data from hospital cost reports. 84 Fed. Reg. at 42301. Using this data, the Secretary calculates the national average hourly wage ("AHW") and an AHW for each urban and rural area. 76 Fed. Reg. 51476, 51591–93

(Aug. 18, 2011). The Secretary calculates the wage index adjustment for each urban and rural area by dividing the AHW for the area by the national AHW. *Id*.

26. The Medicare statute also requires the Secretary to adjust the portion of OPPS payments attributable to labor-related costs for geographic differences in wage costs. 42 U.S.C. § 1395*l*(t)(2)(D). The Secretary has bound himself by regulation to use the wage index that he calculated for IPPS to adjust the labor-related portion of OPPS payments. 42 C.F.R. § 419.43(c).

**C. The Wage Index Rural Floor**

27. In 1997, Congress enacted legislation requiring the Secretary to ensure that the wage index for a hospital not located in a rural area may not be less than the wage index for hospitals located in rural areas of the same state. BBA, § 4410(a); 42 U.S.C. § 1395ww note. The legislation states as follows:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index *applicable* under such section to any hospital which is not located in a rural area (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww(d)(2)(D)) may not be less than the area wage index *applicable* under such section to hospitals located in rural areas in the State in which the hospital is located.

*Id*. (emphases added). This provision is commonly referred to as the "rural floor."

28. The rural floor is effective for all federal fiscal years after the FY ending September 30, 1997.

29. Prior to the IPPS final rule for FY 2020, the Secretary interpreted the rural floor provision to mean that hospitals located in urban areas must be assigned the greater of the wage index adjustment for their area or the wage index adjustment for rural areas in the same state. The Secretary has referred to the rural floor and the state rural wage index collectively as the "Statewide Rural Floor Wage Index." 76 Fed. Reg. 51,476, 51,813 (Aug. 18, 2011).

**D. Rural Reclassification**

30. In section 401 of the CAA, Congress amended the Medicare statute to create a mechanism whereby some hospitals located in urban areas could be treated as being located in rural areas for purposes of the IPPS. Pub. L. No. 106-113, § 401, 113 Stat. 1501, 1501A-369 (1999); codified at 42 U.S.C. § 1395ww(d)(8)(E). Section 401 states in relevant part as follows:

> For purposes of *this subsection*, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a *subsection (d)* hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

*Id*. (emphases added).

31. The references in section 401 to "this subsection" and "subsection (d)" refer to 42 U.S.C. § 1395ww(d), which is the provision of the Medicare statute that governs IPPS payments.

32. The Secretary has implemented CAA section 401 in his regulations at 42 C.F.R. § 412.103. At the time the Secretary adopted this regulation, he stated that a hospital that reclassifies as rural under this provision "is treated as rural for all purposes of payment under the Medicare inpatient hospital prospective payment system (section 1886(d) of the Act) including … the wage index … as of the effective date of the reclassification." 64 Fed. Reg. 47025, 47030 (Aug. 1, 2000).

33. When an urban hospital reclassifies as rural under section 401, the Secretary has historically included the hospital's AHW data in the calculation of the rural wage index for the state in which the hospital is located. *See* 71 Fed. Reg. 47870, 48020 (Aug. 18, 2006).

34. Because the Secretary has historically considered the rural floor and the rural wage index to be one-and-the-same, rural reclassifications would also affect the calculation of the rural floor. *See* 76 Fed. Reg. at 51813.

### E. 2020 Through 2022 IPPS and OPPS Rules

35. In the IPPS final rule for FY 2020, in a departure from his decades-old policy of

treating the rural floor and the rural wage index as one-and-the-same, the Secretary decided that the rural floor and the rural wage index would be calculated separately in FY 2020 and in future years. 84 Fed. Reg. at 42332–36.

36. Under the Secretary's IPPS final rule for FY 2020, the rural wage index for each state was calculated based on the AHWs of all naturally rural hospitals in the state as well as urban hospitals that have reclassified as rural under CAA section 401 and 42 C.F.R. § 412.103. *Id*.

37. The calculation of the state rural floors for FY 2020 included the AHWs of all naturally rural hospitals in the state but excluded the AHWs of hospitals that have reclassified as rural under CAA section 401 and 42 C.F.R. § 412.103. *Id*.

38. The Secretary continued his policy of excluding the AHWs of hospitals that have reclassified as rural in calculating the rural floors for FYs 2021 and 2022. *See* 85 Fed. Reg. at 58768. And in accordance with his regulation requiring him to use the IPPS wage index for OPPS payments, the Secretary also applied this policy to OPPS payments in CYs 2020 through 2022. *See* 84 Fed. Reg. at 61187–88; 85 Fed. Reg. at 85916–17; 86 Fed. Reg. at 63511.

39. As a result of excluding the AHWs of hospitals that have reclassified as rural under CAA section 401 and 42 C.F.R. § 412.103, the Secretary calculated state rural floors that were in some cases lower than the rural wage index for the same state. The FY 2022 rural wage index and rural floor for the state of Texas were 0.9085 and 0.8061, respectively.

40. Consequently, some urban hospitals in Texas were assigned wage index adjustments that are lower than the wage index adjustments assigned to rural hospitals in the state, including all of the Providers in this appeal. *See* Exhibit 1 (Summary of Hospital Cost Years and Wage Indices).

### F. The *Citrus* Litigation and the FY 2023 Final Rule

41. A group of thirty-four hospitals filed suit in the United States District Court for the District of Columbia challenging the Secretary's calculation of the rural floors in FY 2020. Each hospital was assigned a wage index adjustment in FY 2020 that was lower than the wage index adjustment applicable to rural hospitals within their respective states. The hospitals argued that the Secretary's decision to calculate the rural floor separately from the rural wage index violated the statute because, among other reasons, the rural floor provision states that the rural floor must be equal to the rural wage index.

42. On April 8, 2022, the District Court issued a decision siding with the hospitals.

> Because the Court finds that the rural floor provision unambiguously provides that the level of the rural floor for a state is set at the applicable rural wage index of that state—i.e., the rural floor and rural wage index are one and the same—Defendant's decision to calculate separately those indexes using different methodology violated the statute. Put plainly, the statute provides no room for the Secretary to "fix" whatever anomalies he may think exists in the operation of the statute. A court cannot set aside a statute's plain language simply because the agency thinks it leads to undesirable consequences in some applications.

*Citrus HMA, LLC v. Becerra*, 597 F.Supp.3d 450, 461 (D.D.C. 2022).

43. The court remanded the case back to the Secretary for further proceedings. The Secretary subsequently corrected the FY 2020 IPPS wage adjustment factors for the *Citrus* plaintiffs and adjusted their IPPS payments for that period by those corrected adjustment factors. And in the IPPS final rule for FY 2023, the Secretary abandoned his policy of calculating the rural floor and rural wage index separately. But that change was only effective for FY 2023 and onward. 87 Fed. Reg. at 49004. The Secretary did not revise the rural floors he had calculated and applied to IPPS and OPPS payments in FYs 2020 through 2022.

**G. The FY 2024 Final Rule.**

44. In a subsequent rulemaking for FY 2024, CMS further stated that it "now agrees that the best reading of [the rural reclassification statute] is that it instructs CMS to treat [reclassified rural] hospitals the same as geographically rural hospitals for the wage index calculation." 88 Fed. Reg. 58640, 59383 (Aug. 28, 2023). Once again, however, CMS stated that the effective date of its new policy recognizing that reclassified rural hospitals and geographically rural hospitals should be treated identically was only effective prospectively beginning October 1, 2023. *Id.* at 59177.

**H. Medicare Cost Report Appeals**

45. The Secretary contracts with Medicare Administrative Contractors ("MACs") to administer payment to hospitals participating in the Medicare program.

46. Hospitals receive interim payments from MACs throughout the year. Interim payments are reconciled at the end of the year based on annual cost reports submitted by the hospitals that identify the costs incurred furnishing services to Medicare beneficiaries. 42 C.F.R. § 413.20. A hospital's MAC will audit the cost report and issue a notice of program reimbursement ("NPR"). *Id*. § 405.1803. The NPR itemizes adjustments to the cost report and represents the final determination of the MAC as to the amount of Medicare reimbursement owed to the hospital for the period.

47. Hospitals dissatisfied with the final determinations of their MACs have recourse to the Provider Reimbursement Review Board ("Board"). 42 U.S.C. § 1395*oo*. The statute sets forth three—and only three—requirements a hospital must meet for the Board to grant the hospital a hearing: (1) it must be "dissatisfied with a final determination of the…fiscal intermediary," (2) the amount in controversy must be $10,000 or more ($50,000 in the aggregate for group appeals), and

(3) the hospital must file its request for a hearing within 180 days after receiving the NPR from the MAC. 42 U.S.C. § 1395oo(a)–(b).

48. When the Board has jurisdiction to hear an appeal, but the appeal involves a statute, regulation, or policy that the Board is without authority to overturn, the Board may, through its own motion or upon request of the provider, grant expedited judicial review of the appeal. 42 U.S.C. § 1395oo(f)(1). If expedited judicial review is granted, the provider can seek judicial review in federal court without first having a hearing before the Board. *Id.* The provider must file its complaint no later than 60 days after receiving notice of the Board's decision to grant expedited judicial review. *Id.*

**I. The Self-Disallowance Regulation**

49. The Secretary has over the years attempted to retrofit a fourth requirement, described by the Supreme Court as a "presentment" requirement, into the statutory conditions for Board relief. The Health Care Finance Administration ("HCFA"), the precursor to CMS, initially required providers to present all claims to their MACs in the first instance on their cost reports, even if the MAC had no authority to make the requested payment. At that time, HCFA reasoned that presenting an unallowable claim to the MAC was necessary to show the provider was "dissatisfied" with the amount of program reimbursement as that term is used in section 1395oo(a)(1)(A)(i). The Supreme Court rejected this interpretation in *Bethesda Hospital Association v. Bowen*, finding that presenting nonallowable claims to the MAC would be an exercise in futility, and that "[n]o statute or regulation expressly mandates that a challenge to the validity of a regulation be submitted first to the [MAC]." 485 U.S. 399, 404 (1988).

50. The Secretary wrongly interpreted the *Bethesda* decision as an invitation to adopt a presentment requirement by regulation. In 2008, the Secretary adopted a regulation requiring

hospitals to present unallowable claims to MACs as a precondition to the Board granting the provider a right to a Board hearing. 42 C.F.R. § 405.1835(a)(1)(ii) (repealed). If a provider did not follow the self-disallowance regulation, the Board was instructed to dismiss the provider's appeal. The D.C. District Court invalidated the Secretary's regulation in *Banner Heart Hosp. v. Burwell*, 201 F. Supp. 3d 131 (D.D.C. 2016). The *Banner* court ruled that *Bethesda* was based on the Court's reading of the "plain meaning of the statute" and its "language and design … as a whole," and that the *Bethesda* Court's decision did not turn on the fact that the Secretary had not adopted a presentment requirement by regulation because such a regulation would be contrary to the statute. *Id*. at 140. The Secretary claimed to acquiesce in the *Banner* decision and does not require providers to go through the futile process of self-disallowing unallowable claims for cost reporting periods that began before January 1, 2016.

51. Cost reporting periods beginning on or after January 1, 2016 are controlled by the Secretary's third iteration of the self-disallowance (or presentment) requirement. In 2015 (while the *Banner* decision was pending), the Secretary adopted yet another regulation requiring hospitals to present futile claims to the MACs to gain access to Board relief. The new regulation, which applies to cost reporting periods beginning on or after January 1, 2016, states in relevant part as follows:

> In order for a provider to receive or potentially qualify for reimbursement for a specific item for its cost reporting period, the provider's cost report…must include an appropriate claim for the specific item, by…
>
> …
>
> (ii) Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy…

42 C.F.R. § 413.24(j).

52. Unlike the regulation struck down in *Banner*, the Board is not instructed to dismiss the provider's appeal if it does not comply with the current self-disallowance regulation. Under the Secretary's reasoning, *Bethesda* requires the Board to grant the provider a hearing. But in an attempt to evade the holding of *Bethesda*, the Secretary's new regulation establishes the presentment requirement as a "[s]ubstantive reimbursement requirement for an appropriate cost report claim," i.e., a condition for receiving payment from the Medicare program. Thus, although the Board must grant the provider a hearing on the merits, the Secretary's new regulations expressly prohibit the Board from permitting reimbursement for items that were not self-disallowed in the cost report. Section 413.24(j)(5) of the regulation says that a "reviewing entity" such as the Board "may only permit reimbursement for the specific item under appeal solely to the extent authorized by § 405.1873(f)." And section 405.1873(f)(1)(ii) says that an appeal item "is not reimbursable" if the Board makes the factual finding that the hospital "[d]id not include an appropriate cost report claim for the specific item under appeal," i.e., did not self-disallow the item in the cost report. In order to pay lip service to *Bethesda*, the regulation allows the Board to retain jurisdiction to hear the appeals of providers that have not complied with the self-disallowance regulation, but the regulation strips the Board of its power to "affirm, *modify* or reverse a final determination of the" MAC as Congress granted in 42 U.S.C. § 1395oo(d) (emphasis added). This third attempt to impose a presentment requirement is no more lawful than the prior two.

53. In addition to being futile, the Secretary uses the presentment requirement to shield himself from liability for past payment errors that remain hidden from providers for years. Once the error is eventually discovered and successfully challenged in court, the Secretary can cite the presentment requirement to deny the same relief to providers who did not "self-disallow" the lost payment on their cost reports solely because they were never aware it existed.

### J. The Medicare Statute Provides for Expedited Judicial Review

54. Section 1878(a)(1)(A)(ii) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the Provider Reimbursement Review Board ("PRRB") if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination; and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. If an appeal satisfies these requirements, the PRRB has jurisdiction to hear the appeal. *Id.*

55. When the PRRB has jurisdiction to hear an appeal, but the appeal involves a statute, regulation, or policy that the PRRB is without authority to overturn, the PRRB may, through its own motion or upon request of the provider, grant expedited judicial review of the appeal. 42 U.S.C. § 1395oo(f)(1). If expedited judicial review is granted, the provider can seek judicial review in federal court without first having a hearing before the PRRB. *Id.* The provider must file its complaint no later than 60 days after receiving notice of the PRRB's decision to grant expedited judicial review. *Id.*

56. The Medicare statute allows providers to bring a civil action pursuant to the Administrative Procedure Act through expedited judicial review. *See* 42 U.S.C. § 1395oo(f)(1).

57. The Administrative Procedure Act provides that the "reviewing court shall … hold unlawful and set aside agency action … found to be … (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2).

## V. PROCEDURAL HISTORY

58. Pursuant to the procedures set forth at 42 U.S.C. § 1395oo, the Plaintiff Hospitals have challenged, and are dissatisfied with, the Secretary's calculation of the rural floors calculated for Texas in 2022, as described in the preceding paragraphs. The Plaintiff Hospitals filed appeals with the PRRB and satisfied all jurisdictional requirements for an appeal set forth at 42 U.S.C. § 1395oo(a)-(b).

59. Between July 2, 2026 and August 4, 2026, the PRRB determined that it had jurisdiction to hear the Plaintiffs' appeals, but that it lacked authority to decide the legal questions at issue in this case and likewise granted expedited judicial review for the Plaintiffs' appeal. *See* Exhibits 2 through 3 (compilation of expedited judicial review determinations).

60. In granting expedited judicial review, the PRRB determined that the Plaintiffs failed to comply with the Secretary's self-disallowance regulations.

61. The Plaintiff Hospitals now file this civil action within 60 days of the date on which they received notification of the PRRB's expedited judicial review decisions.

62. All the Plaintiff Hospitals are urban hospitals in Texas that would have benefited from the rural floor in 2022 had the Secretary calculated it in the manner required by the statute. Because the Secretary exceeded his statutory authority, and acted arbitrarily and capriciously, in calculating the Texas rural floor in 2022, the Plaintiff Hospitals bring this suit seeking the invalidation of the Secretary's new methodology for calculating the rural floor and an order for their wage index adjustments to be properly calculated in each of their respective appeals.

## VI. ASSIGNMENT OF ERRORS

63. The Secretary's decision in FY 2020 to separately calculate the rural wage index and the rural floors for each state violated BBA section 4410(a) and CAA section 401, and his

decision to continue this policy in setting the rural floors for IPPS payments through 2022 impermissibly understated the reimbursement owed to the Plaintiffs. BBA Section 4410(a) specifies that the wage index for hospitals in a state "may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located." Pub. L. No. 105–33, § 4410(a), 111 Stat. 251, 402 (Aug. 5, 1997). That language unambiguously ties the rural wage index to the rural floor.

64. In addition, the Secretary's decision to exclude the AHWs of hospitals that have reclassified as rural under section 401 and 42 C.F.R. § 412.103 from the calculation of the rural floor for each state violates section 401 of the CAA, which provides that the Secretary "*shall* treat" a qualifying hospital "as being located in the rural area … of the State in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E)(i) (emphasis added). Since the Secretary includes the AHWs of hospitals that are located in a rural area in the calculation of the rural floor, section 401 requires the Secretary to also include the AHWs of urban hospitals that have reclassified as rural in the calculation of the rural floor. Indeed, the Secretary "now agrees that the best reading of [the rural reclassification statute] is that it instructs CMS to treat [reclassified rural] hospitals the same as geographically rural hospitals for the wage index calculation." 88 Fed. Reg. at 59383.

65. Neither BBA section 4410(a) nor CAA section 401 affords the Secretary discretion as to whether he will comply with their terms. Instead, these statutes are mandatory. *See, e.g.*, *Lopez v. Davis*, 531 U.S. 230, 231 (2001) ("Congress used 'shall' to impose discretionless obligations").

66. The Secretary's obligations under these provisions are unequivocal. Section 4410(a) of the BBA requires the Secretary to ensure that a hospital's wage index is not less than the wage index that applies to hospitals located in rural areas in the same state. And section 401 of

the CAA requires the Secretary to treat a 401 hospital as if it were located in a rural area for the purposes of IPPS.

67. The Secretary has also shirked his obligation to update the OPPS wage adjustment factors for CY 2022. The Secretary's own regulation at 42 C.F.R. § 419.43(c)(1) requires him to adjust OPPS payments for a calendar year by the IPPS adjustment factors adopted for the federal fiscal year. Consistent with his obligation set forth in that regulation, where IPPS wage adjustment factors are subsequently corrected, the Secretary recalculates OPPS payments based on the corrected IPPS adjustment factors. 69 Fed. Reg. 65682, 65843 ("The final wage indices used for payment in CY 2005 for OPPS will reflect the wage indices in the . . . IPPS final rule *and any subsequent corrections to that final rule*."); 71 Fed. Reg. 67960, 68013 ("As is our practice, we adopt changes made to the . . . IPPS wage index values after they have been finalized.").

68. Insofar as the Secretary subsequently corrects the Plaintiffs' IPPS adjustment factors for FY 2022, as he must, and subsequently applies those adjustment factors to the Plaintiffs' IPPS payments for that year, 42 C.F.R. § 419.43(c)(1) requires him to adjust the Plaintiffs' OPPS payments for CY 2022 by those same corrected adjustment factors.

## COUNT I

## Violation of the Medicare Statute and the Administrative Procedure Act: Agency Action Not in Accordance with Law

69. Plaintiffs incorporate and reallege Paragraphs 1 through 69 above as if fully set forth herein.

70. The Administrative Procedure Act, as incorporated into the Medicare statute, permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), 706(2)(C).

71. The Secretary's methodology for calculating the rural floor for IPPS payments in 2022 is unlawful because it violates the plain meaning of the Medicare statute. Section 4410(a) of the BBA specifies that the wage index that is assigned to an urban hospital cannot be less than the wage index that is assigned to a rural hospital within the same state. Furthermore, section 401 of the CAA provides that the Secretary shall treat an urban hospital that reclassifies as rural under that provision as rural for all purposes of the IPPS. The methodology that the Secretary adopted for calculating the rural floor in 2020 and continued to apply in 2021 and 2022 violates both section 4410(a) of the BBA and section 401 of the CAA.

72. Since the Secretary is required by statute to correct the IPPS wage adjustment factors for FY 2022, he is also compelled by his own regulation at 42 C.F.R. § 419.43(c)(1) to correct the OPPS wage adjustment factors for CY 2022 to match the corrected IPPS wage adjustment factors for that year.

**COUNT II**

**Violation of the Medicare Statute and the Administrative Procedure Act: Arbitrary and Capricious Agency Action**

73. Plaintiffs incorporate and reallege Paragraphs 1 through 73 above as if fully set forth herein.

74. The Administrative Procedure Act, as incorporated into the Medicare statute, permits judicial review of agency actions, findings, and conclusions that are "arbitrary, capricious," or "an abuse of discretion." 5 U.S.C. § 706(2)(A).

75. The Secretary's methodology for calculating the rural floor is arbitrary and capricious because it results in urban hospitals being paid at a wage index that is lower than rural hospitals within the same state. Furthermore, because the Secretary is required by statute to correct the IPPS wage adjustment factors for FY 2022, it would be arbitrary and capricious for him to ignore his binding

regulation at 42 C.F.R. § 419.43(c)(1) that requires him to apply those corrected IPPS wage adjustment factors to the Plaintiff Hospitals' OPPS payments for that same year.

**COUNT III**

**Violation of the Medicare Statute: Board Authority**

76. Plaintiffs incorporate and reallege Paragraphs 1 through 76 above as if fully set forth herein.

77. The Administrative Procedure Act instructs that a reviewing court "shall…hold unlawful and set aside agency action…found to be…not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C), 42 U.S.C. § 1395oo(f).

78. The Secretary's self-disallowance regulation is unlawful because Congress did not grant him authority to promulgate the rule in the first instance. Without Congress's grant of authority, an agency "literally has no power to act." *New York Stock Exch. LLC v. SEC*, 962 F.3d 541, 553 (D.C. Cir. 2020) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). As the Supreme Court observed in *Bethesda Hospital Ass'n v. Bowen*, no provision exists in which Congress granted the Secretary the authority to promulgate a self-disallowance requirement. 485 U.S. 399, 404 (1988).

79. The Secretary's self-disallowance regulation is also unlawful because it conflicts with the Medicare statute. When Congress enacted § 1395oo(d), it expressly granted the Board "the power to affirm, modify, or reverse a final determination of the [contractor] with respect to a cost report…." 42 U.S.C. § 1395oo(d). This section empowers the Board to "modify, or reverse a final determination of the [contractor] with respect to a cost report" and to compel the contractor

to pay amounts owed to the provider as reflected in the provider's cost report. 42 C.F.R. §§ 413.20(b), 405.1803(a).

80. When the Supreme Court interpreted "the plain language" of § 1395oo(d), the Court observed that "[t]he only limitation prescribed by Congress [in § 1395oo(d)] is that the matter must have been 'covered by such cost report,' that is, a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 406 (1988).

81. Section 413.24(j)(5) provides that a "reviewing entity," such as the Board, "may only permit reimbursement for the specific item under appeal solely to the extent authorized by § 405.1873(f)." Section 405.1873(f)(1)(ii), in turn, bars the Board from reimbursing the provider if the provider "[d]id not include an appropriate cost report claim for the specific item under appeal, the specific item is not reimbursable" even "regardless of whether the Board further determines in such final hearing decision that the other substantive reimbursement requirements for the specific item are … satisfied." These two regulatory provisions expressly preclude the Board from using the statutory powers granted by Congress and unlawfully prohibit the Board's statutory power to compel the Secretary to make payment by imposing an extra-statutory limitation—namely, a prohibition on the Board's power to compel payment of costs or claims not presented in a cost report.

82. Accordingly, the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are contrary to the Medicare statute because the regulations impermissibly constrain the authority granted by 42 U.S.C. § 1395oo(a)(1)(A)(i) to the Board to decide a provider's dissatisfaction with "the amount of total program reimbursement due the provider." 42 U.S.C. § 1395oo(a)(1)(A)(i).

**COUNT IV**

**Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action – Board Authority**

83. Plaintiffs incorporate and reallege Paragraphs 1 through 83 above as if fully set forth herein.

84. The Administrative Procedure Act instructs that a reviewing court "shall…hold unlawful and set aside agency action…found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C), 42 U.S.C. § 1395oo(f).

85. Agency action is arbitrary and capricious when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

86. Agency action fails the arbitrary and capricious test when it fails to demonstrate "reasoned decision making." *Id.* at 52; *see also Nat'l Telephone Co–op. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained.").

87. The Secretary's self-disallowance regulation fails to show reasoned decision-making because the regulation contradicts the plain language of the statute and courts have now twice informed the Secretary that a protest requirement is unlawful. Congress granted to the Board the authority to decide issues brought to it by providers related to "the amount of the total program reimbursement due the provider." 42 U.S.C. § 1395oo(a)(1)(A)(i). In direct contrast, the

Secretary's regulations take that power away from the Board and prevent the Board from deciding the amount of total program reimbursement due to the provider. In addition, the rationales the Secretary provided for the imposition of the self-disallowance regulation do not withstand scrutiny and are belied by how the requirement is applied in practice which is solely as a technical filing requirement to be used by the Secretary and his agents to shield himself from liability and deny Medicare reimbursement that is otherwise required by statute and binding regulations.

88. The self-disallowance regulation is also arbitrary and capricious because, in promulgating this regulation, the Secretary did not explain how he reconciled his policy with the Board's statutory authority to decide Medicare reimbursement disputes. Because the regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are arbitrary and capricious and an abuse of discretion, they are unlawful and invalid.

## VII. RELIEF REQUESTED

89. The Plaintiff Hospitals request an Order:

(a) Declaring invalid and enjoining the Secretary from applying the methodology that the Secretary adopted for calculating the state rural floor in 2022;

(b) Directing the Secretary to calculate the IPPS rural floor for the Plaintiff Hospitals' in a manner consistent with that Order, to adjust the Plaintiff Hospitals' IPPS wage adjustment factors in accordance with the lawfully calculated rural floors for their respective states, to apply those same corrected IPPS wage adjustment factors to the Plaintiff Hospitals' OPPS payments as required by 42 C.F.R. § 419.43(c)(1), and to make prompt payment of any additional amounts due the Plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

(c) Declaring invalid and enjoining the Secretary from applying the self-disallowance requirement at 42 C.F.R. §§ 413.24(j) and 405.1873;

(d) Providing such other relief as the Court may consider appropriate.

Date: August 31, 2026

Respectfully submitted,

/s/ Daniel J. Hettich
Daniel J. Hettich, D.C. Bar No. 975262
Mark D. Polston, D.C. Bar No. 431233
Christopher P. Kenny, D.C. Bar No. 991303
Alek W. Pivec, D.C. Bar No. 1046247
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20006
(202) 737-0500 (phone)
(202) 626-3737 (fax)
DHettich@kslaw.com

*Attorneys for Plaintiffs*